## Benford *et al. versus* Schell.

Delivery of the keys of a safe sold and of the room in which it stood, without removal of the safe, *Held*, sufficient to pass the property under the circumstances.

May 21st, 1867. Before WOODWARD, C. J., THOMPSON and AGNEW, JJ. STRONG and READ, JJ., absent.

Error to the Court of Common Pleas of *Somerset county*.

This was an issue under the Sheriff's Interpleader Act, in which Henry F. Schell was plaintiff, and George W. Benford & Co., and M. A. Sanner & Co., were defendants.

M. Treadwell was a banker in Somerset, and on the 11th of April 1866, by written agreement, sold a safe and all his banking fixtures to Schell, the plaintiff. On the next day he made an assignment for the benefit of his creditors; on the 14th of the same month he executed a judgment note to Benford & Co., on which an execution was issued same day, and the safe and fixtures levied on. Sanner & Co. were also judgment-creditors, and the same property was levied on under their judgment, April 16th.

On the trial of the interpleader, Treadwell testified:—

"The safe was in the house I occupied as tenant of George Parker. I was in possession on the 11th of April last. On that day I sold the safe and all the bank fixtures to H. F. Schell. After we articled I gave him the keys of the safe, and one of the keys to the front door—the only one I had in my pocket at the time. Schell gave me his two notes, for $600 each, payable in 60 and 90 days. This sale was made before I made the assignment for the benefit of my creditors. After I made the assignment the notes were passed by me to the assignee. Schell gave me a full price. I gave $1000 for the safe, and $200 was a fair price for the fixtures. The safe weighs, I think, 2000 pounds. Mr. Schell is still in possession. I made the assignment next day. Schell is now in the banking business, and is using the safe. There

[Benford *v.* Schell.]

were previous negotiations between us about the safe. I told Mr. Schell I presumed Mr. Parker would let him have the room—that he might have all my right to it. I had one key, but I had no control of the room. I unlocked the door once only afterwards and went into the room. This was after the sale and after the assignment. Mr. John Benford had some business with me, and I went into the room to talk with him about it. I took my papers all out of the safe, the same evening I made the sale. The books were left in and passed to Mr. Weyand, the assignee, when I made the assignment. There was more than one set of keys for the safe. I had one set, and the other set was locked up in a paper case in the bank. I gave the set I had to Mr. Schell, immediately after he gave me his notes. I gave Schell the other key of the door after the levy was made. I told Schell where the other set of safe-keys were. I did not sell Mr. Schell the paper case. I never had the keys after I told Schell where they were. Nothing of value left in the safe but the books. I supposed that Mr. Schell could take my place as tenant of Mr. Parker, but I told him he had better see Mr. Parker. I told Mr. Weyand the books were in the safe, that he could go to Mr. Schell and get them. I had one of the keys of the house for two or three days after I sold the safe. I gave a judgment to Benford & Co., on Saturday evening after the sale of the safe. The execution was issued and placed in the sheriff's hands on same evening. I had one of the keys up till that time. If I had had both keys in my pocket at the time of sale, I would have delivered them to Mr. Schell. The safe has rollers and could be taken out of the door. Mr. Schell was to pay the rent from 1st April, if he stayed in the house. I never saw the keys of the safe after I told Schell where they were.

Geo. Kimmel testified : I was clerk in bank of M. Treadwell ; I went into the room on Friday or Saturday after the sale of the safe and showed Mr. Schell how to lock the safe—I got the keys from Mr. Schell. The safe occupied the same spot ; I opened the safe ; Treadwell's books were in. Mr. Schell opened his bank about the 1st of May. The sign of M. Treadwell & Co., " Banking House," still remained.

The Court (King, P. J.) charged :—

" If you believe the statement testified to by M. Treadwell, we instruct you there was such a delivery of the property as will sustain the sale, and take it out of the Statute of Frauds, and your verdict must be for the plaintiff."

The verdict was for the plaintiff.

The defendant having removed the case to the Supreme Court, assigned the instruction of the court below for error.

*G. F. Baer*, for plaintiff in error, cited Clow *v.* Woods, 5 S. & R. 282 ; Steelwagon *v.* Jeffries, 8 Wright 411–12 ; Chase *v.* Ralston,

[Benford v. Schell.]

6 Casey 541; Shaw v. Levy, 17 S. & R. 101; Dunlap v. Bour-
nonville, 2 Casey 72; Young v. McClure, 2 W. & S. 151; Babb
v. Clemson, 10 S. & R. 428; Carpenter v. Mayer, 5 Watts 485;
Eagle v. Eichelberger, 6 Id. 31; McBride v. McClellan, 6 W.
& S. 95; Linton v. Butts, 7 Barr; Haynes v. Hunsicker, 2 Casey
60; Milne, Brown & Co. v. Henry, 4 Wright 568; Hoffner v.
Clarke, 5 Whart. 545; Hoofsmith v. Cope, 6 Id. 53; Wendell
v. Smith, 1 Smith's Lead. Cas. 40; Wilbur v. Strickland, 1 Rawle
460.

*Colburn*, for defendants in error, cited Leedom v. Philips, 1
Yeates 529; Beatty v. Dougherty, Dist. Ct. Phila., 17 Leg. Int.
222; Clow v. Woods, 5 S. & R. 282, 286; Haynes v. Hun-
sicker, 2 Casey 58, 59; Dawes *et al.* v. Cope, 4 Binn. 258;
Luckenbach v. Brickenstein, 5 W. & S. 145; Cadbury v.
Nolen, 5 Barr 324; Hugus v. Robinson, 12 Harris 9, 13; Chase
v. Ralston, 6 Casey 539; Steelwagon v. Jeffries, 8 Wright 412;
Leonard v. Winslow *et al.*, 2 Grant 143; Act of 14th June 1836,
Purd. 968, Pamph. L. 630; Mitchell v. Willock, 2 W. & S. 253;
Fitler v. Maitland, 5 Id. 307; Dallam v. Fitler, 6 Id. 323; Klapp's
Assignees v. Shirk, 1 Harris 589, 592; see 1 Smith's Lead. Cas.
70, 71.

The opinion of the court was delivered, July 3d 1867, by

THOMPSON, J.—We think the undisputed facts of this case
establish a sufficient delivery of the safe, the subject of the inter-
pleader, to constitute a valid sale as against creditors. It was
cumbersome, weighing some 2000 pounds, and was not capable
of immediate removal. The keys of it, as well as of the room,
were delivered to the purchaser who had purchased the fixtures
in the room intending to continue the banking business in it, as
he has done since. The parties did all that they were required
to do in order to constitute a valid sale in the circumstances of
the case. This is well settled in numerous cases: 5 S. &. R.
286; 2 Casey 59; 12 Harris 9; 6 Casey 539; 8 Wright
412. The case was well disposed of below, and the judgment is
affirmed.